## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **STERLING BANK,** | ) | |
| | ) | |
| **Interpleader,** | ) | |
| | ) | |
| **v.** | ) | **Case No:2:15-cv-00152-WHA-SRW** |
| | ) | |
| **CAESAREA-MILLBROOK, LLC;** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Claimants.** | ) | |

## MOTION OF CAESAREA DEVELOPMENT, LLP AND JOSEPH L. HERROD TO REALIGN AND ADD ADDITIONAL PARTIES

COME NOW the claimants Caesarea Development, LLP ("CD") and Joseph

L. Herrod ("Herrod") and, pursuant to Rules 13, 19 and 20 of the Federal Rules of

Civil Procedure, hereby respectfully request that the Court: (1) realign the parties

upon the release of interpleader Sterling Bank, a division of Synovus Bank, a

national banking association (the "Bank") to make CD and Herrod defendants and

all other parties plaintiffs; and (2) allow CD and Herrod to add Jackson Hospital &

Clinic, Inc. ("Jackson Hospital") and Primary Physicians, Inc. f/k/a PriMed

Physicians, Inc. ("PPI") as counterclaim defendants in order to allow for complete

relief among the parties.  CD and Herrod asserted claims against Jackson Hospital

and PPI as "third-party claims" in Doc. #2, but believe those claims are correctly

described as "counterclaims" based upon the requested realignment.  This motion is intended to assist the Court in clarifying these procedural matters.

In further support of this motion, CD and Herrod state as follows:

## BACKGROUND FACTS

### I.  Procedural Background.

This litigation was filed by the Bank in the Circuit Court of Montgomery County, Alabama as an interpleader under Rule 22 of the Alabama Rules of Civil Procedure.  The interpleader action was filed when the Bank was "made aware of a dispute between the claimants relating to control over the accounts of and funds belonging to Casarea Millbrook, LLC and Caesarea-Chantilly, LLC."  Doc. #1.3 at p. 4.  The Bank unilaterally named CD, Herrod, Donald P. Brobst ("Brobst"), A. Chandler Muller ("Muller"), and C. Dennis Wooldridge ("Wooldridge"), Jackson Health, Inc. ("JHI"), Caesarea-Millbrook, LLC ("Millbrook") and Caesarea-Chantilly, LLC ("Chantilly") as defendants-claimants in that action.  Doc. #1.3 at pp. 3-4.  The "dispute" referenced by the Bank became known to the Bank as a result of service upon the Bank, by JHI, Brobst, Muller and Wooldridge of the February 3, 2015 purported written consent executed by JHI, Brobst, Muller and Wooldridge to remove CD and Herrod from their managerial role with Millbrook and Chantilly.

The state court action was removed by CD and Herrod to this Court on March 6, 2015.  *See* Doc. #1.

## II.   Factual Background.[1]

From 2010 to 2014, Herrod managed the medical practice of claimants Brobst, Muller and Wooldridge.  The practice was operated through PPI.  The doctors were medical directors and employees of PPI, while Herrod was CEO.  Once Herrod was made CEO of PPI, he was able to guide the company out of substantial troubles.  At no time from 2010-2014 did the owners of PPI express any dissatisfaction with Herrod's management.

In December 2013, PPI was given 120 days' notice from its landlord (Baptist Health Montgomery) that PPI's lease for its facilities would not be renewed.  Brobst, Muller and Wooldridge wanted to avoid any control over their practice by Baptist Health Montgomery, so they asked Herrod to find a solution.  The plan proposed by Herrod at that time was to move the PPI facilities to new locations.  Herrod explained to the doctors that, as a part of this proposed plan, an infusion of capital would be required.  The doctors agreed to the plan.

---

[1] All of the factual allegations of this motion were made by Herrod and CD in their incorrectly titled "Answer, Cross-claims and Third-Party Claims," which is Doc. #2.  If the Court grants this motion, realigns the parties and allows Herrod and CD to add Jackson Hospital and PPI as parties, then Herrod and CD will amend the response to the interpleader to reflect the correct procedural posture of this matter.

As a result of the implementation of this plan, PPI was in desperate need of an additional capital infusion in 2014.  Using his expertise and knowledge, Herrod negotiated a deal on behalf of PPI with Jackson Hospital whereby Jackson Hospital infused needed capital to PPI, and PPI provided to Jackson Hospital an expanded market, primary care physicians, and new referrals.  This deal was signed and documented on September 30, 2014.

Central Alabama Primary Care Specialists, LLC ("CAPCS") was the new entity formed as a part of the September 30, 2014 deal between Jackson Hospital and PPI in order to operate the business formerly operated by PPI.[2]  Alkemi Management, LLC ("Alkemi") was also formed as a part of the deal between Jackson Hospital and PPI.[3]  Alkemi was created to, among other roles, manage CAPCS.  In order to document the agreement between CAPCS and Alkemi, those parties entered into a Management Agreement and a License Agreement dated September 30, 2014.

---

[2] Although CAPCS plays a major role in this dispute, it is not named as a party to this action. CAPCS is not named as a party because (1) the Management Agreement between CAPCS and Alkemi provides for arbitration to resolve all disputes between those parties (an arbitration has been initiated by Alkemi), and (2) CAPCS is controlled by the parties named herein (JHI and PPI are its members) making its presence unnecessary.

[3] Alkemi is also not named as a party to this litigation.  Like CAPCS, Alkemi is not named because (1) the Management Agreement between CAPCS and Alkemi provides for arbitration to resolve all disputes (an arbitration has been initiated by Alkemi), and (2) Alkemi's "Operating Agreement" provides for resolution of Alkemi-related disputes in another venue.

Also as a part of this September 30, 2014 deal, Jackson Hospital (through JHI) purchased a majority interest in two entities intended to own and develop real property—Millbrook and Chantilly.  Following the deal, Millbrook and Chantilly were purportedly owned by JHI (80%), Brobst (5%), Muller (5%), Wooldridge (5%) and Herrod (5%).  However, only JHI, Brobst and Herrod paid the required initial capital into the companies.  Muller and Wooldridge refused or were unable to do so.

Millbrook and Chantilly each entered into a Development Agreement with CD to develop the real property to be owned by Millbrook and Chantilly.  As a part of those Development Agreements, both Millbrook and Chantilly were each required to pay to CD a development fee ($250,000 for Millbrook and $289,000 for Chantilly), including the payment of one-half of the development fee ($125,000 for Millbrook and $144,500 for Chantilly, for a total of $269,500) upon the execution of the Development Agreements.  The Development Agreements were executed by the parties, but, at the direction of JHI, Brobst, Muller and Wooldridge, neither Millbrook nor Chantilly made this initial payment.

Millbrook and Chantilly also contracted with CD to purchase from CD the real property to be developed.  Neither Millbrook nor Chantilly has purchased the real property for development from CD because neither has (or had) sufficient cash to pay the agreed-upon purchase price.  The primary reason for this shortfall was the

failure and/or refusal of Muller and Wooldridge to pay their share of the required capital contributions to Millbrook and Chantilly.

On January 19, 2015, the CAPCS Board of Advisors met at Jackson Hospital and, with no prior written or oral notice of any problem or purported breach, voted to terminate the Management Agreement with Alkemi, remove Herrod as manager of CAPCS, hire Jackson Hospital to take over the management of CAPCS, and hire Jackson Hospital's legal counsel (Gilpin Givhan) as counsel for CAPCS. The Board of Advisors refused to give any reasoning or basis for any of its decisions during the January 19, 2015 meeting.

Immediately following the meeting of the CAPCS Board of Advisors, on January 19 and 20, 2015, CAPCS began taking actions designed to prevent Alkemi from carrying out its obligations under the Management Agreement. The actions taken by CAPCS on January 19-20, 2015 also prevented Herrod and CD from managing the operations of Millbrook and Chantilly.

Two weeks later, on February 3, 2015, JHI, Brobst, Muller and Wooldridge purported to remove CD and Herrod from their managerial role with Millbrook and Chantilly. As with CAPCS, Jackson Hospital was also appointed as the manager of Millbrook and Chantilly. Then, the Bank received from JHI, Brobst, Muller and Wooldridge a copy of the written action purportedly taken by JHI, Brobst, Muller and Wooldridge to remove Herrod and CD. As a result of its receipt of that written

action, the Bank claimed a dispute existed and interpleaded with the state court all of the funds held in the accounts of Millbrook and Chantilly with the Bank (the "Accounts").

## LEGAL ARGUMENT

The "claimants" named by the Bank in its interpleader action, have no substantive claim against the Bank, but instead have disputes between one another regarding control of the Accounts, control of Millbrook and Chantilly, and other actions taken by JHI, Brobst, Muller and Wooldridge, in conjunction with Jackson Hospital and PPI.  Because the presence of Jackson Hospital and PPI is necessary to accord complete relief to Herrod and CD, as well as to avoid the risk of inconsistent obligations and multiple lawsuits, the Court should realign the parties with CD and Herrod as defendants, the remaining claimants as plaintiffs, and allow the addition of Jackson Hospital and PPI as counterclaim defendants.

**I.    The parties should be realigned to reflect their true interests in the dispute.**

"It is the court's responsibility to align the parties according to their interests in litigation." *Boland v. State Auto. Mut. Ins. Co.*, 144 F.Supp. 2d 1282, 1284 (M.D. Ala. 2001).  "The court's alignment of the parties must be determined according to 'the principal purpose of the suit and the primary and controlling matter in dispute.'" *Boland*, 144 F.Supp. 2d at 1284-85 (quoting *Indemnity Ins. Co. of North America v. First Nat'l Bank at Winter Park, Fla.*, 351 F.2d 5198, 522 (5th Cir. 1965), in turn

citing *City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 72 (1941)); *see also City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012) (holding that the district courts are required "to determine the principle purpose of the suit and the primary and controlling matter in dispute and align the parties accordingly.")

Here, "the principal purpose of the suit and the primary and controlling matter in dispute," at least as originally filed by the Bank, is the control of the Accounts. This dispute is between Herrod and CD on one side, and JHI, Brobst, Muller and Wooldridge on the other. The action leading directly to the filing of the interpleader by the Bank was the improper written notice provided to the Bank by JHI, Brobst, Muller and Wooldridge. Because the actions of JHI, Brobst, Muller and Wooldridge led to the filing of the dispute, those parties should be aligned as plaintiffs. The opposing parties (Herrod and CD) should be aligned as defendants.

## II.   Jackson Hospital and PPI should be joined under Rule 19 or Rule 20.

Herrod and CD request that they be permitted to join Jackson Hospital and PPI pursuant to Rule 19 or Rule 20 of the Federal Rules of Civil Procedure. The dispute over the control of the Accounts belonging to Millbrook and Chantilly are only a small part of a larger dispute involving wrongdoing by Jackson Hospital, PPI, JHI, Brobst, Muller and Wooldridge against Herrod and CD. The larger dispute is the result, in part, of Jackson Hospital conspiring with Brobst, Muller and

Wooldridge to defraud Herrod, CD and non-party Alkemi.  Specifically, Jackson Hospital, Brobst, Muller and Wooldridge lured Herrod, CD and Alkemi to enter into the Management Agreement and the License Agreement with CAPCS, thereby enticing Herrod, CD and Alkemi to provide to CAPCS with years' worth of experience, knowledge and effort of Herrod and his business partner, Reynold Yordy (the other member of Alkemi).  However, Jackson Hospital, Brobst, Muller and Wooldridge intended to breach that agreement less than 120 days later just to avoid providing any meaningful compensation to Herrod, CD, Alkemi and Yordy.  CD and Herrod have a number of tort and contract claims involving Jackson Hospital and PPI which are based upon the same facts, circumstances, events and occurrences as their claims involving JHI, Brobst, Muller and Wooldridge.

    A.    <u>Jackson Hospital and PPI are necessary parties under Rule 19</u>.

A party is required and must be joined to the action if:

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and  is so situated that disposing of the action in the person's absence may:
>
>> (i)   as a practical matter impair or impede the person's ability to  protect the interest; or
>>
>> (ii)   leave an existing party subject to a substantial risk of incurring   double,   multiple,   or   otherwise inconsistent obligations because of the interest.

*Fed. R. Civ. P.* 19(a). "Compulsory joinder is therefore mandated when a plaintiff's interest in structuring its own case is outweighed by the risk of harm resulting from one of the three factors identified in Rule 19(a): (1) impossibility of granting complete relief; (2) potential prejudice to the absent party; or (3) potential prejudice to the existing litigants." *Alfa Life Ins. Corp. v. Advantage Consulting Group, Inc.*, 236 F.R.D. 570, 571 (M.D. Ala. 2006) (citing *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 670 (11th Cir. 1982) (discussing Rule 19 factors in deciding whether a party is necessary to the litigation); Moore's <u>Federal Practice 3D</u> § 19.03[1] ("The compulsory joinder rule mandates joinder in three situations which reflect, respectively, three policy interests served by the Rule ...")). "In deciding whether a party should be joined under Rule 19, 'pragmatic concerns, especially the effect on the parties and the litigation, control.'" *Id.* (quoting *Challenge Homes,* 669 F.2d at 669).

In this case, since this interpleader and the "plaintiff" will be released, there is no "plaintiff" shaping his case, so the need to "outweigh" any risk of harm resulting to the plaintiff is non-existent. Even so, Herrod and CD can meet the elements necessary to add Jackson Hospital and PPI as opposing parties.

The Court cannot accord "complete relief" among the existing parties without Jackson Hospital and PPI. Herrod and CD have a number of tort and other claims against JHI, Brobst, Muller and Wooldridge. Certain of these claims also involve

Jackson Hospital and PPI.  If Herrod and CD are not permitted to assert claims against Jackson Hospital and PPI in this action, then to obtain complete relief they must name JHI, Brobst, Muller and Wooldridge as parties in another action, or risk the possibility of judgments arising from the same claims, circumstances and facts from two different courts (which could potentially be conflicting).

For these same reasons, CD and Herrod may be prejudiced by not joining Jackson Hospital and PPI as a parties to this action.  Herrod and CD allege the existence of a conspiracy led by Jackson Hospital and with JHI, Brobst, Muller and Wooldridge participating, to take control of the business of PPI (now CAPCS) without payment to Herrod or CD (or Alkemi or Yordy) for the extensive work and effort put into PPI and the development of CAPCS.  The "reward" for all of this effort by Herrod and others was a guaranteed three year management contract for the entity owned and controlled by Herrod—Alkemi.  However, CD and Herrod believe Jackson Hospital orchestrated a surreptitious plan to terminate the Management Agreement, thereby depriving Herrod and CD of the benefits of their work, labor and money, and to take control of PPI's (now CAPCS's) business itself.

In addition to the commission of a number of torts, the Jackson Hospital plan involved the breach by various entities and parties of operating agreements, bylaws and various other contracts and agreements between these parties.  "Courts have recognized that 'a contracting party is the paradigm of an indispensable party' under

Rule 19(b).” *Weeks v. Housing Authority of City of Opp, Ala.*, 292 F.R.D. 689, 695

(M.D. Ala. 2013) (quoting *Caribbean Telecomms., Ltd. v. Guy. Tel. & Tel. Co.*, 594

F. Supp. 2d 522, 532 (D.N.J. 2009); *HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.*, No. 08–

81040–CIV, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010)). “Parties to a

contract are indispensable when a suit concerns the rights and obligations afforded

by the contract.”   *Weeks*, 292 F.R.D. at 695 (citing *Clinton v. Babbitt*, 180 F.3d

1081, 1088 (9th Cir. 1999) (affirming district court’s dismissal of complaint where

Native American tribe, which was a party to a settlement agreement between two

tribes, a company, and a federal agency, could not be joined in action because the

tribe enjoyed sovereign immunity); *Capitol Med. Ctr., LLC v. Amerigroup Md., Inc.*,

677 F. Supp. 2d 188, 192–93 (D.D.C. 2010) (finding that seller hospital corporation

was a party to a medical services contract and thus indispensable); *CP Solutions

PTE, Ltd. v. GE*, 470 F. Supp. 2d 151, 157–58 (D. Conn. 2007) (dismissing

complaint for lack of jurisdiction because nondiverse company was a “party to a

contract which is the subject of the lawsuit”)).  Here, Herrod and CD asserted breach

of contract claims against Jackson Hospital, PPI, JHI, Brobst, Muller and

Wooldridge arising from the improper termination of Herrod and CD from their

managerial roles with CAPCS, PPI, Millbrook and Chantilly; the failure of Muller

and Wooldridge to contribute capital to Millbrook and Chantilly; the breach of

Development Agreements in favor of CD by JHI, Brobst, Muller and Wooldridge;

the breach by PPI of its employment contract with Herrod; and the interference with these (and other) relationships by Jackson Hospital and JHI.  *See* Doc. #2 at pp. 24-29.

     B.    <u>Jackson Hospital and PPI may be joined under Rule 20</u>.

Rule 20 of the Federal Rules of Civil Procedure provides that:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

*Fed. R. Civ. P.* 20(a)(1).   "Rule 20(a) makes clear that a defendant pleading a counterclaim or cross-claim may join additional persons if he satisfies the Rule's two requirements for joinder."  *Lanier Bus. Products v. Graymar Co.*, 342 F. Supp. 1200, 1203 (D. Md. 1972).  "As stated in 3A Moore's Federal Practice 2799, for the purpose of determining who may be joined, the defendant pleading the claim is to be regarded as a plaintiff and the additional parties as plaintiffs or defendants, as the case may be, and Rule 20 applied in the usual manner."  *Id.* (internal punctuation omitted).

     The case of *Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 330 (S.D.N.Y. 1990) is analogous to the case here.  In *Broad.* Music, the

defendant sought to bring counterclaims against individual officers and parties connected with the original plaintiff.  The District Court for the Southern District of New York held that the assertion of such claims, including the joinder of new parties as counterclaim defendants, was permitted under Rules 13 and 20:

> Lifetime maintains that Preston may be properly joined as a counterclaim defendant pursuant to Fed. R. Civ. P. 13 and 20.  Rule 13(h) provides that "persons other than those made parties to the original action may be made parties to a counterclaim or crossclaim in accordance with Rules 19 and 20."  Rule 20(a) permits the joinder as defendants of all persons against whom is asserted any claim arising out of the same transaction "and if any question of law or fact common to all defendants will arise in the action." Since Lifetime seeks to allege the same wrongdoing against BMI and Preston, Rule 20(a) is satisfied and Preston may be joined as a counterclaim defendant.

*Id.*

In Doc. #2, Herrod and CD incorrectly added Jackson Hospital and PPI as "third-party defendants."  Those parties should be counterclaim defendants.  As discussed above, Herrod and CD asserted a number of claims against Jackson Hospital and PPI for conduct they undertook in concert with the named parties— JHI, Brobst, Muller and Wooldridge—and which arises from the same "series of transactions or occurrences."  *See* <u>Doc. #2</u>.  The questions of law and fact applicable to Jackson Hospital and PPI are identical to those for JHI, Brobst, Muller and Wooldridge, at least as it pertains to those claims directed at all of (or most of) those

defendants (squeeze-out, misrepresentation, suppression, breach of contract, civil conspiracy). Herrod and CD should be permitted to add Jackson Hospital and PPI as counterclaim defendants.

## CONCLUSION

WHEREFORE, based upon the foregoing, CD and Herrod respectfully request that, upon the release of the Bank from this action, CD and Herrod be realigned as defendants and all other parties as plaintiffs, and that Jackson Hospital and PPI be added as additional counterclaim defendants, and Herrod and CD be granted leave to amend their response to interpleader (Doc. #2) to reflect this procedural posture.

Respectfully submitted,

_/s/ John W. Clark IV_
BRUCE F. ROGERS (ROG010)
JOHN W. CLARK IV (CLA087)

BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
The Luckie Building, Suite 415
600 Luckie Drive (35223)
Post Office Box 530886
Birmingham, Alabama 35253
Telephone:  205-879-1100
Facsimile:   205-879-4300
Email:        brogers@bainbridgemims.com
                   jclark@bainbridgemims.com

**Attorneys for Caesarea Development, LLP and Joseph L. Herrod**

15

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that, on   March 25, 2015   , a true and correct copy of this pleading has been served upon the following parties via the district court's CM/ECF electronic filing system and/or electronic mail:


Dennis R. Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 26101-0270
drb@rushtonstakely.com

John W. Weiss
Robert E.L. Gilpin
Simeon F. Penton
GILPIN GIVHAN
Post Office Drawer 4540
Montgomery, Alabama 36103-4540
jweiss@gilpingivhan.com
rgilpin@gilpingivhan.com
spenton@gilpingivhan.com


Jackson Health, Inc.
1722 Pine Street, 11th Floor
Montgomery, Alabama 36106
Attn: Jackson Hospital & Clinic, Inc.,
Registered Agent

Donald P. Brobst
169 Brook Trace Drive
Hoover, Alabama 35244

A. Chandler Muller
2524 Woodley Road
Montgomery, Alabama 36111

C. Dennis Wooldridge
742 McKeithen Place
Millbrook, Alabama 36054

Primary Physicians, Inc. f/k/a PriMed Physicians, Inc.
100 Capital Commerce Blvd., Suite 250
Montgomery, Alabama 36117
Attn: Joseph Herrod, Registered Agent

Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, Alabama 36106
Attn: Joe B. Riley, Registered Agent


 /s/ John W. Clark IV
Of Counsel