## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH L. HERROD and CAESAREA-DEVELOPMENT, LLP, | \| | |
| | \| | |
| REALIGNED PLAINTIFFS | \| | |
| | \| | |
| VS. | \| | CASE NO. 2:15-CV-152 |
| | \| | |
| JACKSON HEALTH, INC.; DONALD P. BROBST; C. DENNIS WOOLDRIDGE; A. CHANDLER MULLER; JACKSON HOSPITAL & CLINIC, INC.; PRIMARY PHYSICIANS, INC., | \| | |
| | \| | |
| REALIGNED DEFENDANTS | \| | |

### ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS OF DEFENDANT JACKSON HOSPITAL & CLINIC, INC.

COMES NOW the Defendant/Counterclaim Plaintiff identified as Jackson Hospital & Clinic, Inc. ("Jackson Hospital"), and for answer to the Plaintiff/Counterclaim Defendants' Amended Complaint sets forth as follows:

### ADMISSIONS AND DENIALS TO AMENDED COMPLAINT

1.     Jackson Hospital admits that Joseph L. Herrod ("Herrod") is over the age of majority as defined by the State of Alabama. Jackson Hospital is without sufficient knowledge or information to admit or deny the current residence or citizenship of Herrod.

2.      Jackson Hospital admits that Caesarea Development, LLP ("CD") is a Delaware limited liability partnership.   Jackson Hospital is without sufficient knowledge or information to admit or deny the identity of all of the partners of CD or their citizenship or residency.

3.      Jackson Hospital admits that Reynold Yordy ("Yordy") is over the age of majority in Alabama.  Jackson Hospital is without sufficient knowledge or information to admit or deny the residence or citizenship of Yordy.

4.      Jackson Hospital admits Alkemi Management, LLC ("Alkemi") is a Florida limited liability company.   Jackson Hospital is without sufficient knowledge or information to admit or deny allegations concerning the composition of Alkemi Management, LLC.

5.      Jackson Hospital admits that Jackson Health, Inc. ("JHI") is an Alabama-based corporation.   Jackson Hospital admits that JHI is a citizen of Alabama.

6.      Jackson Hospital admits that Donald P. Brobst is an individual over the age of majority and is a resident of the State of Alabama.

7.      Jackson Hospital admits that A. Chandler Muller is an individual over the age of majority and is a resident of the State of Alabama.

8.     Jackson Hospital admits that C. Dennis Wooldridge is an individual over the age of majority and is a resident of the State of Alabama.

9.     Jackson Hospital admits that Primary Physicians, Inc. f/k/a PriMed Physicians, Inc. (PPI) is an Alabama corporation with its principal place of business in the State of Alabama.

10.     Jackson Hospital admits that the shareholders of PPI are Herrod, Brobst, Muller, and Wooddridge.

11.     Jackson Hospital admits that it is a non-profit corporation with its primary place of business in Montgomery, Alabama.

12.     Jackson Hospital admits that Central Alabama Primary Care Specialists, LLC (CAPCS) is an Alabama limited liability company consisting of PPI and JHI.

13.     Upon information and belief, Caesarea-Millbrook, LLC ("Millbrook") is an Alabama LLC which was and is named as a defendant in the Interpleader and has not been dismissed from this cause, that no claims are asserted against it in the Amended Complaint, and Millbrook asserts an interest in the outcome of this cause.

14.     Upon information and belief, Caesarea-Chantilly, LLC ("Chantilly") is an Alabama LLC which was and is named as a defendant in the Interpleader and

has not been dismissed from this cause, that no claims are asserted against it in the Amended Complaint, and Chantilly asserts an interest in the outcome of this cause.

15.     Jackson Hospital admits that Sterling Bank is a division of Synovus Bank but is otherwise without sufficient knowledge or information to admit or deny the remaining averments in Paragraph 15 of the Amended Complaint.

16.     The averments set forth in Paragraph 16 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital presumes that this Court has jurisdiction over the subject matter of this action based on diversity of citizenship, but is without sufficient knowledge or information to admit or deny residency or citizenship of Herrod and CD.

17.     The averments set forth in Paragraph 17 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital presumes that this Court has jurisdiction over the subject matter of this Action based on diversity of citizenship, but is without sufficient knowledge or information to admit or deny residency or citizenship of Herrod and CD.

18.     The averments set forth in Paragraph 18 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital.

To the extent a response may be warranted, Jackson Hospital admits that Brobst, Muller, Wooldridge, JHI, and PPI are citizens of the State of Alabama for purposes of jurisdiction.

19.    Jackson Hospital is without sufficient knowledge or information to admit or deny the averments concerning the relevancy of Sterling Bank to the issue of diversity jurisdiction.

20.    The averments set forth in Paragraph 20 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital does not contest jurisdiction herein.

21.    The averments set forth in Paragraph 21 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital does not contest jurisdiction herein.    Jackson Hospital denies that Plaintiffs/Counterclaim Defendants are entitled to an award of damages.

22.    The averments set forth in Paragraph 22 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital does not contest jurisdiction herein.

23.     Jackson Hospital denies the allegations set forth in Paragraph 23 of the Amended Complaint.

24.     The averments set forth in Paragraph 20 of the Amended Complaint are jurisdictional in nature and do not warrant a response from Jackson Hospital. To the extent a response may be warranted, Jackson Hospital does not contest venue herein.

25.     The allegations of Paragraph 25 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

26.     The allegations of Paragraph 26 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

27.     The allegations of Paragraph 27 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

28.     The allegations of Paragraph 28 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

29.     The allegations of Paragraph 29 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

30.     The allegations of Paragraph 30 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

31.     The allegations of Paragraph 31 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

32.     The allegations of Paragraph 32 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in

this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

33.    The allegations of Paragraph 33 are not directed to, and do not purport to describe events involving Jackson Hospital. To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

34.    The allegations of Paragraph 34 are not directed to, and do not purport to describe events involving Jackson Hospital. To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

35.    The allegations of Paragraph 35 are not directed to, and do not purport to describe events involving Jackson Hospital. To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

36.    The allegations of Paragraph 36 are not directed to, and do not purport to describe events involving Jackson Hospital. To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

37.     The allegations of Paragraph 37 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

38.     The allegations of Paragraph 38 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

39.     Jackson Hospital denies the allegations set forth in Paragraph 39 of the Amended Complaint.

40.     Jackson Hospital admits that as a result of negotiations in which Herrod participated, CAPCS was formed.  Jackson Hospital otherwise denies the allegations of Paragraph 40.

41.     Jackson Hospital denies the allegations set forth in Paragraph 41 of the Amended Complaint.

42.     Jackson Hospital denies that Paragraph 42 of the Amended Complaint accurately and completely recites the contractual arrangements between Jackson Hospital and PPI.  Jackson Hospital admits that certain agreements were executed on the 30th day of September, 2014 wherein PPI agreed to contribute certain assets

and Jackson Hospital agreed to contribute certain capital into the entity known as CAPCS.  Therefore, this paragraph is denied as stated.

43.    Jackson Hospital admits that CAPCS was formed to operate urgent care centers, some of which were in locations formerly occupied by PPI but otherwise denies the allegations set forth in Paragraph 43 of the Amended Complaint.

44.    Jackson Hospital admits that PPI is the owner of 70.59% of CAPCS and that 29.41% of CAPCS is owned by JHI.

45.    Jackson Hospital admits that Alkemi was formed in September 2014 and, that on September 30, 2014, a Management Agreement was entered into between Alkemi Management, LLC and CAPCS.  Jackson Hospital denies the remaining allegations set forth in Paragraph 45 of the Amended Complaint.

46.    Jackson Hospital denies the allegations set forth in Paragraph 46 of the Amended Complaint.

47.    Jackson Hospital denies the allegations set forth in Paragraph 47 of the Amended Complaint.

48.    Jackson Hospital admits that CAPCS and Alkemi entered a Management Agreement and a License Agreement.

49.    Jackson Hospital denies the allegations set forth in Paragraph 49 of the Amended Complaint.

50.    Jackson Hospital denies the allegations set forth in Paragraph 50 of the Amended Complaint.

51.    Jackson Hospital denies the allegations set forth in Paragraph 51 of the Amended Complaint.

52.    Jackson Hospital responds that the language of the Management Agreement cited in Paragraph 52 speaks for itself and otherwise denies the allegations set forth in this Paragraph.

53.    The allegations of Paragraph 53 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

54.    The allegations of Paragraph 54 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

55.    The allegations of Paragraph 55 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in

this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

56.    Jackson admits that Herrod and Alkemi were requested to supply financial reports and other data concerning the performance of CAPCS.  Herrod and Alkemi, however, failed to prepare and timely furnish CAPCS any financial reports as requested. Jackson Hospital otherwise denies the allegations set forth in Paragraph 56 of the Amended Complaint.

57.    Jackson Hospital denies the allegations set forth in Paragraph 57 of the Amended Complaint.

58.    Jackson Hospital is without specific knowledge or information to admit or deny the allegations set forth in Paragraph 58 of the Amended Complaint.

59.    Jackson Hospital denies the allegations set forth in Paragraph 59 of the Amended Complaint.

60.    Jackson Hospital admits that the Board of Advisors of CAPCS, consistent with the terms of the CAPCS Limited Liability Company Agreement, voted to remove Herrod as manager of CAPCS and that efforts were undertaken at that point to appoint a new manager in an effort to salvage CAPCS. Otherwise, Jackson Hospital denies the allegations set forth in Paragraph 60 of the Amended Complaint.

61.     Jackson Hospital admits the allegations set forth in Paragraph 61 of the Amended Complaint.

62.     Jackson Hospital denies the allegations set forth in Paragraph 62 of the Amended Complaint.

63.     Jackson Hospital denies the allegations set forth in Paragraph 63 of the Amended Complaint.

64.     Jackson Hospital denies the allegations set forth in Paragraph 64 of the Amended Complaint.

65.     Jackson Hospital denies the allegations set forth in Paragraph 65 of the Amended Complaint.

66.     Jackson Hospital denies the allegations set forth in Paragraph 66 of the Amended Complaint.

67.     Jackson Hospital denies the allegations set forth in Paragraph 67 of the Amended Complaint.

68.     Jackson Hospital denies the allegations set forth in Paragraph 68 of the Amended Complaint.

69.     Jackson Hospital denies the allegations set forth in Paragraph 69 of the Amended Complaint.

70.     Jackson Hospital denies the allegations set forth in Paragraph 70 of the Amended Complaint.

71.     Jackson Hospital denies the allegations set forth in Paragraph 71 of the Amended Complaint.

72.     Jackson denies the allegations set forth in Paragraph 72 of the Amended Complaint.

73.     Jackson Hospital denies the allegations set forth in Paragraph 73 of the Amended Complaint.

74.     Jackson Hospital denies the allegations set forth in Paragraph 74 of the Amended Complaint.

75.     Jackson Hospital denies the allegations set forth in Paragraph 75 of the Amended Complaint.

76.     Jackson Hospital denies the allegations set forth in Paragraph 76 of the Amended Complaint.

77.     Jackson Hospital denies the allegations set forth in Paragraph 77 of the Amended Complaint.

78.     Jackson Hospital denies the allegations set forth in Paragraph 78 of the Amended Complaint.

79.     Jackson Hospital denies that the reasons and necessities for the creation of Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 79 of the Amended Complaint.  Therefore this allegation is denied as stated.

80.     Jackson Hospital admits the allegations set forth in Paragraph 80 of the Amended Complaint.

81.     Jackson Hospital admits that JHI held an interest in those entities described in the Amended Complaint as Millbrook and Chantilly but denies Paragraph 81 as stated.

82.     Jackson Hospital admits that JHI made its required initial capital outlay into Millbrook and Chantilly.   Otherwise, Jackson Hospital denies the allegations as stated in Paragraph 82 of the Amended Complaint.

83.     Jackson Hospital denies the allegations set forth in Paragraph 83 of the Amended Complaint.

84.     Jackson Hospital admits the allegations set forth in Paragraph 84 of the Amended Complaint.

85.     Jackson Hospital denies that Paragraph 85 accurately, completely and truthfully recites the terms and provisions of the Development Agreements, the

language of which speak for themselves.  Therefore, Paragraph 85 is denied as stated.

86.     For response to Paragraph 86, Jackson Hospital avers that CD has neither earned nor is it entitled to any payments under the Development Agreements at this time.

87.     Jackson Hospital admits the allegations set forth in Paragraph 87 of the Amended Complaint.

88.     Jackson Hospital admits that neither Millbrook nor Chantilly have become owners of the real property subject to the Purchase Agreements because CD failed to take the necessary actions to close the transactions. Otherwise, Jackson denies the allegations set forth in Paragraph 88 of the Amended Complaint.

89.     Jackson Hospital denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 89 of the Amended Complaint.  Therefore this allegation is denied as stated.

90.     Jackson denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 90 of the Amended Complaint.  Therefore, this allegation is denied as stated.

91.     Jackson Hospital admits that actions were taken in accordance with the terms and provisions of the Company Agreements to remove Caesarea Development, LLP as manager of the company.   Otherwise, Jackson Hospital denies the allegations set forth in Paragraph 91 of the Amended Complaint.

92.     Jackson Hospital admits that efforts were undertaken to establish a manager for Millbrook and Chantilly.   Otherwise, Jackson Hospital denies the allegations set forth in Paragraph 92 of the Amended Complaint.

93.     Jackson Hospital denies the allegations set forth in Paragraph 93 of the Amended Complaint.

94.     Jackson Hospital denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 94 of the Amended Complaint.   Therefore, this allegation is denied as stated.

95.     Jackson Hospital denies the allegations set forth in Paragraph 95 of the Amended Complaint.

96.     Jackson Hospital denies the allegations set forth in Paragraph 96 of the Amended Complaint.

97.     Jackson Hospital denies the allegations set forth in Paragraph 97 of the Amended Complaint.

Response to Claim 1

~ 17 ~

98.    Jackson Hospital incorporates herein by reference responses to Paragraphs 1-97 above as if set out in full.

99.    Jackson Hospital admits that CD was at one time appointed as manager of Millbrook and Chantilly and that Herrod acted as manager of CAPCS. Otherwise, Jackson Hospital denies the allegations set forth in Paragraph 99 of the Amended Complaint.

100.   Jackson Hospital denies the allegations set forth in Paragraph 100 of the Amended Complaint.

101.   Jackson Hospital denies the allegations set forth in Paragraph 101 of the Amended Complaint.

102.   Jackson Hospital denies the allegations set forth in Paragraph 102 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Count 1.

<u>Response to Claim 2</u>

103.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-102 above as if set out in full.

104.   Jackson Hospital denies the allegations set forth in Paragraph 104 of the Amended Complaint.

105.   Jackson Hospital denies the allegations set forth in Paragraph 105 of the Amended Complaint.

106.   Jackson Hospital denies the allegations set forth in Paragraph 106 of the Amended Complaint.

107.   Jackson Hospital denies the allegations set forth in Paragraph 107 of the Amended Complaint.

108.   Jackson Hospital denies the allegations set forth in Paragraph 108 of the Amended Complaint.

109.   Jackson Hospital denies the allegations set forth in Paragraph 109 of the Amended Complaint.

110.   Jackson Hospital denies the allegations set forth in Paragraph 110 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Claim 2.

### Response to Claim 3

111.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-110 above as if set out in full.

112.   Jackson Hospital denies the allegations set forth in Paragraph 112 of the Amended Complaint.

113.   Jackson Hospital denies the allegations set forth in Paragraph 113 of the Amended Complaint.

114.   Jackson Hospital denies the allegations set forth in Paragraph 114 of the Amended Complaint.

115.   Jackson Hospital denies the allegations set forth in Paragraph 115 of the Amended Complaint.

116.   Jackson Hospital denies the allegations set forth in Paragraph 116 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Claim 3.

<u>Response to Claim 4</u>

117.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-116 above as if set out in full.

118.   The allegations of Paragraph 118 are not directed to, and do not purport to implicate Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

119.   The allegations of Paragraph 119 are not directed to, and do not purport to implicate Jackson Hospital.  To the extent that the allegations in this

paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

120.   The allegations of Paragraph 120 are not directed to, and do not purport to implicate Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

121.   The allegations of Paragraph 121 are not directed to, and do not purport to implicate Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

<u>Response to Claim 5</u>

122.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-121 above as if set out in full.

123.   The allegations of Paragraph 123 are not directed to, and do not purport to implicate Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

124.   Jackson Hospital denies the allegations set forth in Paragraph 124 of the Amended Complaint.

125.   Jackson Hospital denies the allegations set forth in Paragraph 125 of the Amended Complaint.

126.   Jackson Hospital admits the allegations set forth in Paragraph 126 of the Amended Complaint.

127.   Jackson Hospital admits the allegations set forth in Paragraph 127 of the Amended Complaint.

128.   Jackson Hospital denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 128 of the Amended Complaint.  Therefore, this allegation is denied as stated.

129.   Jackson Hospital denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 129 of the Amended Complaint.  Therefore, this allegation is denied as stated.

130.   Jackson Hospital denies that events concerning Millbrook and Chantilly are truthfully, accurately and completely recited in Paragraph 130 of the Amended Complaint.  Therefore, this allegation is denied as stated.

131   Jackson Hospital denies the allegations set forth in Paragraph 131 of the Amended Complaint.

132.   Jackson Hospital denies the allegations set forth in Paragraph 132 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Claim 5.

<u>Response to Claim 6</u>

133.   The allegations of Paragraph 133 are not directed to, and do not purport to describe events involving Jackson Hospital.   To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

134.   The allegations of Paragraph 134 are not directed to, and do not purport to describe events involving Jackson Hospital.   To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

135.   The allegations of Paragraph 135 are not directed to, and do not purport to describe events involving Jackson Hospital.   To the extent that the allegations in this Paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

136.   The allegations of Paragraph 136 are not directed to, and do not purport to describe events involving Jackson Hospital.   To the extent that the

allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

137.   The allegations of Paragraph 137 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

138.   The allegations of Paragraph 138 are not directed to, and do not purport to describe events involving Jackson Hospital.  To the extent that the allegations in this paragraph could be construed as alleging any act or omission for which liability could attach to Jackson Hospital, such allegations are denied.

<u>Response to Claim 7</u>

139.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-139 above as if set out in full.

140.   Jackson Hospital denies the allegations set forth in Paragraph 140 of the Amended Complaint.

141.   Jackson Hospital denies the allegations set forth in Paragraph 141 of the Amended Complaint.

142.   Jackson Hospital denies the allegations set forth in Paragraph 142 of the Amended Complaint.

143.   Jackson Hospital denies the allegations set forth in Paragraph 143 of the Amended Complaint.

144.   Jackson Hospital denies the allegations set forth in Paragraph 144 of the Amended Complaint.

145.   Jackson Hospital denies the allegations set forth in Paragraph 132 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Claim 7.

<u>Response to Claim 8</u>

146.   Jackson Hospital incorporates herein by reference responses to Paragraphs 1-145 above as if set out in full.

147.   Jackson Hospital denies the allegations set forth in Paragraph 147 of the Amended Complaint.

148.   Jackson Hospital denies the allegations set forth in Paragraph 148 of the Amended Complaint and further denies that Herrod and CD are entitled to the relief claimed in the "wherefore" provision at the conclusion of Claim 8.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Jackson Hospital is not guilty of the matters set out in the Amended Complaint.

### SECOND DEFENSE

Jackson Hospital pleads the general issue.

### THIRD DEFENSE

Jackson Hospital denies that it has breached any duty it may have had in favor of CD or Herrod.

### FOURTH DEFENSE

No contract existed between Jackson Hospital and Herrod or CD, or alternatively, Jackson Hospital did not breach any contract that may have existed between it and Herrod or CD.

### FIFTH DEFENSE

Herrod was duly terminated as manager of CAPCS in accordance with the terms and provisions of Section 3.5(j) of the Limited Liability Company Agreement of CAPCS. Jackson Hospital is not guilty of oppression or squeeze out as alleged.

## SIXTH DEFENSE

CD was duly terminated as manager of Millbrook and Chantilly in accordance with the terms and provisions of Section 4.3(c) of the Limited Liability Company Agreements of Chantilly and Millbrook. Jackson Hospital is not guilty of oppression or squeeze out as alleged.

## SEVENTH DEFENSE

Herrod and CD have failed to allege misrepresentation and suppression with the specificity required by Rule 9(b) *Federal Rules of Civil Procedure,* and these claims are thus due to be dismissed.

## EIGHTH DEFENSE

Jackson Hospital denies that any legal relationship existed between Jackson Hospital and Herrod or CD which would obligate it to communicate any fact beyond those communicated to Herrod by Jackson Hospital.

## NINTH DEFENSE

Herrod and CD fail to plead the existence of a civil conspiracy with the degree of particularity required to state a claim; thus, it is due to be dismissed.

## TENTH DEFENSE

The Amended Complaint fails to state a claim against Jackson Hospital upon which relief can be granted.

## ELEVENTH DEFENSE

Herrod and CD have failed to mitigate their damages, if any.

## TWELFTH DEFENSE

Jackson Hospital denies that any act or omission by it or any of its agents proximately caused the alleged damages.

## THIRTEENTH DEFENSE

Jackson Hospital pleads the doctrines of payment, waiver and/or release.

## FOURTEENTH DEFENSE

Jackson Hospital pleads the doctrine of accord and satisfaction.

## FIFTEENTH DEFENSE

Herrod and CD are estopped from claiming damages for wrongdoing as alleged in the Complaint.

## SIXTEENTH DEFENSE

Herrod and CD are guilty of unclean hands.

## SEVENTEENTH DEFENSE

Herrod and CD's claims are barred by the business judgment rule.

## EIGHTEENTH DEFENSE

Herrod and CD's claims are barred by the Statute of Frauds to the extent applicable.

## NINETEENTH DEFENSE

Herrod and CD cannot establish reasonable reliance under the standard articulated by the Alabama Supreme Court in Foremost Ins. Co. v. Parham, 693 So. 2d 409 (Ala. 1997), and its progeny.

## TWENTIETH DEFENSE

Jackson Hospital did not intend to deceive Herrod or CD.

## TWENTY-FIRST DEFENSE

Herrod and CD have not alleged any wrongful act on the part of Jackson Hospital sufficient to support an actionable claim for interference with contractual or business relations.

## TWENTY-SECOND DEFENSE

Any interference with Herrod or CD's contractual or business relations was justified.

## TWENTY-THIRD DEFENSE

Defendants are entitled to the benefits and limitations of the Alabama Tort Reform Statutes, including but not limited to, the Punitive Damages Act, and specifically pleads in defense of this action, and asserts the applicability of, the provisions of §§ 6-11-20 through 6-11-30 of the Code of Alabama (1975).

## TWENTY-FOURTH DEFENSE

Plaintiffs' claim for punitive damages is barred by § 6-11-20 of the <u>Code of Alabama</u> (1975).

## TWENTY-FIFTH DEFENSE

Any award of punitive damages in this case is subject to those limitations established by the Alabama Legislature and set forth in § 6-11-21, <u>Code of Alabama</u> (1975). The Alabama Supreme Court's action abolishing the legislatively established cap on punitive damages was unconstitutional and is without effect. Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the Legislature on punitive damages through judicial fiat. See <u>Honda Motor Company Limited v. Oberg</u>, 512 U.S. 415 (1994).

## TWENTY-SIXTH DEFENSE

The imposition of punitive damages in this case based on theories of *respondeat superior*, vicarious liability, or joint and several liability violates the due process clause of the Fourteenth Amendment to the United States Constitution.

**TWENTY-SEVENTH DEFENSE**

Defendant(s) cannot be held liable for punitive damages based on the acts or omissions of a co-defendant pursuant to § 6-11-21(e) of the Code of Alabama (1975).

**TWENTY-EIGHTH DEFENSE**

Defendant(s) cannot be held liable for punitive damages for intentional wrongful conduct or conduct involving malice based on acts or omissions of any agent, employee, or servant pursuant to § 6-11-27 of the Code of Alabama (1975).

**TWENTY-NINTH DEFENSE**

Section 6-11-27 of the Code of Alabama (1975) provides that a principal, employer or other master may only be liable for punitive damages:

> …for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee or servant of said principal, employer or master unless the principal, employee or master either (i) knew or should have known of the unfitness of the agent, employee or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights and safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the act of the agent, servant or employee were calculated to or did benefit the principal, employer or master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act.

Code of Alabama § 6-11-27(a) (1975).   This statutory provision violates a defendant principal's, employer's, or master's due process rights in that it permits an award of punitive damages against a principal, employer or master when the principal, employer, or master only has benefited from an agent, servant or employee's alleged intentional wrongful or malicious conduct without additional proof of knowing acquiescence in the agent, servant or employee's conduct or active intentional wrongful or malicious conduct on the part of the principal, employer or master.   Consequently, the "benefit" portion of § 6-11-27 is due to be stricken as violative of the Fifth and Sixth Amendments of the Constitution of the United States and Article I, Section 6 of the Alabama Constitution.

## THIRTIETH DEFENSE

The Alabama statute authorizing punitive damages, § 6-1-20 of the Code of Alabama (1975), is unconstitutionally vague as written, construed, and applied.

## THIRTY-FIRST DEFENSE

Plaintiffs' Complaint fails to allege a claim for which punitive damages are recoverable.

## THIRTY-SECOND DEFENSE

Defendants deny that they have been guilty of any conduct that would warrant the punitive damages claim being submitted to a jury or would allow Plaintiffs to recover punitive damages.

## THIRTY-THIRD DEFENSE

Defendants aver that an award of punitive damages in this case would serve no purpose for which punitive damages are awarded in Alabama.

## THIRTY-FOURTH DEFENSE

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the constitutional safeguards provided to these Defendants under the Constitution of the United States of America.

## THIRTY-FIFTH DEFENSE

Any verdict based on Plaintiffs' claim for punitive damages would violate these Defendants' guarantee of due process and equal protection under the laws as established by the United States Constitution and the Alabama Constitution as the standards for assessing the propriety of an amount of such damages violates constitutional prohibitions against vague and over broad laws.

**THIRTY-SIXTH DEFENSE**

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the constitutional safeguards provided to these Defendants under the due process clause of the Fourteenth Amendment to the Constitution of the United States of America in that a punitive damages award would be vague and not rationally related to legitimate government interests.

**THIRTY-SEVENTH DEFENSE**

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of Article 1, Section 6 of the Constitution of the State of Alabama which provides that no person shall be deprived of life, liberty or property except by due process of law, in that a punitive damages award would be vague and not rationally related to legitimate government interests.

**THIRTY-EIGHTH DEFENSE**

The imposition of punitive damages without sufficient guidelines as to the proper circumstances for such an award or the amount of such an award would violate the due process guarantees of the United States and Alabama Constitutions.

**THIRTY-NINTH DEFENSE**

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the procedural safeguards provided to these

Defendants under the Fourteenth Amendment to the Constitution of the United States and the Fourth, Fifth and Sixth Amendments as incorporated into the Fourteenth Amendment, and the Alabama constitutional provisions providing due process and the right to confront witnesses, to a speedy trial, to effective assistance of counsel, and to protection against unreasonable searches and seizures, and the protection against double jeopardy and compelled self incrimination.

## FORTIETH DEFENSE

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the self incrimination clause of the Fifth Amendment to the Constitution of the United States of America to impose punitive damages against it, which are penal in nature, yet compel it to disclose potentially incriminating documents and evidence.

## FORTY-FIRST DEFENSE

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the rights guaranteed by the Constitution of the United States of America and the Constitution of the State of Alabama to impose punitive damages against these Defendants which are penal in nature by requiring a burden of proof on the Plaintiffs which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases.

## <u>FORTY-SECOND DEFENSE</u>

Defendants aver that any award of punitive damages to the Plaintiffs in this case would be in violation of the Eighth Amendment to the Constitution of the United States of America in that the damages would be an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States.

## <u>FORTY-THIRD DEFENSE</u>

These Defendants aver that any award of punitive damages to the Plaintiffs in this case would be violative of Article 1, Section 15 of the Constitution of the State of Alabama in that the damages would be an excessive fine.

## <u>FORTY-FOURTH DEFENSE</u>

These Defendants aver that any award of punitive damages to the Plaintiffs in this case would violate the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States on the following separate and several grounds:

    a.    It is a violation of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon the plaintiff's satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

b.  The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of an award against defendant, which thereby violates the due process clause of the Fourteenth Amendment of the United States Constitution;

c.  The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the due process clause of the Fourteenth Amendment of the United States Constitution;

d.  The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the equal protection clause of the Fourteenth Amendment of the United States Constitution;

e.  The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the due process clause of the Fifth and Fourteenth Amendments and the equal protection clause of the Fourteenth Amendment of the United States Constitution;

f.  The procedures pursuant to which punitive damages are awarded permit the imposition of excessive fines in violation of the Eighth Amendment of the United States Constitution.

g.  The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing;

h.  The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award.

## FORTY-FIFTH DEFENSE

Defendants aver that any award of punitive damages to the Plaintiffs in this case would violate the due process clause of Article I, Section 6 of the Constitution of Alabama on the following separate and several grounds:

a.   It is a violation of the due process clause to impose punitive damages, which are penal in nature, upon a civil defendant upon the plaintiff satisfying a burden of proof other than the "beyond a reasonable doubt" burden of proof required in criminal cases;

b.   The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against these defendants;

c.   The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

d.   The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of punitive damages;

e.   The award of punitive damages in this case would constitute deprivation of property without due process of law;

f.   The procedures permit the award of punitive damages upon satisfaction of a reduced standard of proof;

g.   The procedures fail to provide a clear and consistent appellate standard of review of an award of punitive damages;

h.   The procedures permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined.

## FORTY-SIXTH DEFENSE

A punitive damage award would violate the contract clause of Article II of the United States Constitution.

## FORTY-SEVENTH DEFENSE

Plaintiffs' claims for punitive damages are barred because an award of punitive damages under Alabama law will constitute an impermissible burden on interstate commerce in violation of the commerce clause of Article I, Section 9 of the United States Constitution.

## FORTY-EIGHTH DEFENSE

A punitive damage award could not be sustained because any such award which exceeded the limits authorized by the Alabama Criminal Code or any other applicable laws or regulations would constitute an excessive fine and cruel and unusual punishment in violation of the Fourteenth Amendment to the United States Constitution and the Eighth Amendment as incorporated into the Fourteenth Amendment and the Alabama constitutional provisions providing for due process and protection against excessive fines and cruel and unusual punishment.

## FORTY-NINTH DEFENSE

Plaintiffs' claim for punitive damages cannot be upheld based on all the grounds cited by the United States Supreme Court in BMW of N. Am., Inc. v.

<u>Gore</u>, 517 U.S. 559 (1996), in that the Court determined that the provisions of Alabama law governing the right to recover punitive damages or the determination of the amount of punitive damages violate a defendant's right provided by the United States Constitution.

**FIFTIETH DEFENSE**

With respect to Plaintiffs' demand for punitive damages, Defendants specifically incorporate by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards which arose on the decision of <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559 (1996).

**FIFTY-FIRST DEFENSE**

Any award of punitive damages in this case cannot be upheld under <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559 (1996), to the extent it is not based on the least drastic remedy or lowest amount of punitive damages that could be expected to insure that these Defendants will more fully comply with this state's law in the future.

**FIFTY-SECOND DEFENSE**

Plaintiffs' claim for punitive damages cannot be upheld under <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559 (1996), to the extent it seeks to punish, influence

or change Defendants' policies or practices nationwide rather than these Defendants' policies or practices which occurred in this state.

## FIFTY-THIRD DEFENSE

Any award of punitive damages in this case would be unconstitutional under BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996), as these Defendants did not receive fair notice of either the conduct that might subject her to punishment under Alabama law or the severity of the potential penalty that might be imposed as punishment under Alabama law.

## FIFTY-FOURTH DEFENSE

The procedures pursuant to which punitive damages are awarded subject Defendants to punishment under a law not fully established before the alleged offense, in violation of Article I, Section 22 of the Alabama Constitution.

## FIFTY-FIFTH DEFENSE

An award of punitive damages in this case would contravene the constitutional prohibition against *ex post facto* laws as found in Article I, Section 22 of the Alabama Constitution.

## FIFTY-SIXTH DEFENSE

Plaintiffs' claim for punitive damages, and the provisions of Alabama law governing the right to recover punitive damages or the determination of punitive

damages, expose these Defendants to the risk of indefinable, unlimited liability unrelated to the actual loss caused by Defendants' alleged conduct, creating a chilling effect on these defendants' exercise of its right to a judicial resolution of this dispute.

### FIFTY-SEVENTH DEFENSE

Defendants plead any statutory cap, whether applicable to punitive or compensatory damages, and whether still in effect or having been previously declared unconstitutional.

### FIFTY-EIGHTH DEFENSE

Defendant denies all allegations of agency and specifically denies that Plaintiffs are entitled to recover damages pursuant to theories of *respondeat superior*, vicarious liability, imputed negligence, or any other theories of agency.

### FIFTY-NINETH DEFENSE

Jackson Hospital reserves the right to raise different additional defenses as discovery progresses.

## COUNTERCLAIMS OF JACKSON HOSPITAL & CLINIC, INC

Comes Now Defendant/Counterclaim Plaintiff Jackson Hospital & Clinic, Inc. ("Jackson Hospital") and states the following counterclaims against the realigned Plaintiffs Herrod and CD as follows:

### PARTIES

1.   Counterclaim Plaintiff Jackson Health, Inc. ("JHI") is an Alabama corporation with its primary place of business in Montgomery, Alabama. JHI is a citizen of Alabama for purposes of diversity of citizenship jurisdiction.

2.   Counterclaim Plaintiff Jackson Hospital is a non-profit corporation with its primary place of business in Montgomery, Alabama. Jackson Hospital is a citizen of Alabama for purposes of diversity of citizenship jurisdiction.

3.   Counterclaim Defendant Joseph Herrod ("Herrod") is the former CEO of PPI, an owner/member of Alkemi Management, LLC ("Alkemi), and a part owner/partner of Counterclaim Defendant Caesarea Development, LLP ("Caesarea Development").

4.   Counterclaim Defendant Herrod is a resident of Florida and a citizen of Florida for diversity purposes.

5.   Counterclaim Defendant Caesarea Development, LLP (CD) is a Delaware limited liability partnership whose partners are Herrod and Reynold

Yordy.  Caesarea Development is a citizen of Florida and Tennessee for diversity jurisdiction purposes.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332 and § 1367.

## FACTUAL BACKGROUND PERTAINING TO JACKSON HOSPITAL'S COUNTERCLAIMS

7.  Herrod was employed as CEO of Primary Physicians, Inc. ("PPI") from 2010-2014.  Herrod, Dr. Donald Brobst, Dr. Chandler Muller, and Dr. Dennis Wooldridge each own 25% of the shares of PPI.

8.   Herrod's obligations to PPI are defined in an employment agreement between those two parties.  Among other things, Herrod was responsible for the day-to-day management of PPI's business operations.   Neither JHI nor Jackson were (or are) a party to any agreement between Herrod and PPI concerning the operation of PPI.

9.  In December 2013, PPI's landlord, Baptist Health, elected not to renew certain leases negotiated by Herrod on behalf of PPI.  In light of the termination of the Baptist leases, Herrod approached Jackson Hospital concerning the formation of a new joint venture involving the hospital and PPI.

10.   In the course of negotiations with senior management of Jackson Hospital, including but not limited to CEO Joe Riley, Herrod represented PPI to be a financially and economically viable business operation and assured the hospital of his ability to effectively manage any joint venture involving PPI and Jackson Hospital.   In fact, PPI was at the time of Herrod's negotiations with Jackson Hospital experiencing significant financial difficulties, a fact that Herrod concealed from Riley and Jackson Hospital leadership during negotiations.

11.   In addition, Herrod provided Jackson Hospital with false and misleading information concerning PPI's financial status, which Jackson Hospital in turn provided to PYA, an accounting firm that Jackson Hospital retained to provide a valuation analysis of the prospective joint venture with PPI.

12.   Herrod misrepresented and suppressed facts concerning PPI's true status in order to induce Jackson Hospital to enter into, and contribute financial resources to a joint venture with PPI.   In reliance on Herrod's representations concerning the status and viability of PPI, in late September of 2014, Jackson Hospital formed and invested significant capital in JHI for the purpose of funding the joint venture proposed by Herrod.

13.  Herrod's negotiations with Jackson Hospital resulted in the formation of a new entity, Central Alabama Primary Care Specialists, LLLP[1] ("CAPCS") in late September of 2014.  Thereafter, CAPCS operated the health care business formerly owned by PPI.  In turn, as a result of Jackson Hospital's investment in JHI for purposes of the joint venture, JHI made significant initial capital contributions to CAPCS in order to initiate operations.  Initially, PPI owned 71.6% of CAPCS and JHI owned 28.4%.

14.  After CAPCS was formed, Alkemi Management began service as manager of CAPCS.  CAPCS and Alkemi executed a Management Agreement setting out the terms and conditions governing Herrod's and Alkemi's responsibilities in managing CAPCS.

15.  The Management Agreement between Alkemi and CAPCS included provisions for CAPCS to pay Alkemi a management fee for services rendered. The Management Agreement, however, called for Alkemi to obtain confirmation of the fair market value and commercial reasonableness of its services from a third-party valuation firm within 90 days of the closing of the CAPCS transaction.

16.  Despite repeated requests by JHI and CAPCS, Herrod refused to secure the valuation report within the timeframe set forth in the Management Agreement.

---

[1] Central Alabama Primary Care Specialists, LLLP was later converted to Central Alabama Primary Care Specialists, LLC.

This refusal undermined CAPCS and adversely impacted JHI's investment in the company.

17.     Despite his obligations under the Management Agreement with CAPCS, Herrod failed to perform his duties as Manager of CAPCS from October 1, 2014, through early 2015.

18.   Herrod engaged in a pattern of self-dealing, diversion and misuse of corporate assets, and mismanagement, which was contrary to the interests of JHI and CAPCS and constituted a breach of his duties of good faith and fair dealing vis-à-vis CAPCS and its members, including JHI, to wit:

a.  Herrod paid himself monthly personal expenses in excess of what was allowed by the Management Agreement between Alkemi and CAPCS.

b.  Herrod transferred assets of CAPCS to other entities without approval of the CAPCS Board of Advisors.  These transfers included the transfer of money, software, servers, patient information, intellectual property, other property, and employees to Alkemi and Caesarea Development.

c.  Herrod mismanaged and misled CAPCS, and the Board of Advisors of CAPCS, and misled JHI with regard to the implementation and ownership of technology, computer hardware, and software that was represented to be necessary of CAPCS operations, but in fact such items were not necessary.

**d.** Herrod also failed to take advantage of federal incentives and subsidies relating to electronic medical records ("EMR"), and these actions subjected PPI and/or CAPCS to penalties for failing to comply with federal EMR mandates.

**e.** Herrod terminated the use of certain software, and falsely stated to the Board of Advisors that the software could no longer be supported.

**f.** Herrod failed to provide CAPCS bankers and/or auditors with financial statements on a timely basis.

**g.** Herrod failed to properly pay taxes and accounts payable to vendors.

**h.** Herrod failed to pay premiums for professional liability insurance which resulted in a cancellation of the insurance on December 29, 2014.

**i.** Herrod diverted approximately $600,000 from PPI and/or CAPCS towards Alkemi's management fee.

**j.** Herrod transferred funds from CAPCS to Alkemi and Caesarea Development and other persons affiliated with Herrod without the written approval of CAPCS.

**k.** Herrod transferred corporate assets outside the ordinary course of business to Alkemi, Caesarea Development, and other persons under his control or

~ 48 ~

direction, including furniture, CAPCS's server and related software, and other intellectual property.

19. During the first several months that CAPCS was operating under the management of Herrod and Alkemi (October-December 2014), CAPCS continued to lose money and otherwise deteriorate from a financial and operational standpoint.

20. Despite the ongoing deterioration of CAPCS, Herrod provided JHI and other members of CAPCS with no financial information for the first three months of operations. Herrod refused to provide the requested financial data despite requests for information from JHI representatives and the fact that both the operating agreement governing CAPCS (Article 3, Section 3.2) and the Management Agreement between CAPCS and Herrod/Alkemi (Section 2) require the submission of regular financial reports to the CAPCS Board of Advisors.

21. By virtue of his position as manager of CAPCS, Herrod had a fiduciary duty to communicate and timely supply accurate factual information to JHI and CAPCS about the company's operations and status. Despite the obligations imposed on him by the operative agreements and his fiduciary duties to JHI, PPI, and CAPCS, Herrod concealed the true financial condition of CAPCS from its constituent members. Herrod delayed production of the financial data in order to

suppress and obscure his self-dealing, diversion of resources, and mismanagement of CAPCS operations and resources.

22. Herrod's refusal to provide JHI and CAPCS any information concerning operations and finances prevented JHI and CAPCS's discovery of Herrod's misuse of resources and mismanagement of CAPCS.

23. Jackson Hospital and JHI also requested Herrod to provide information concerning reports of excessive delays in patient waiting times at the clinics operated by CAPCS.   CAPCS requested that Herrod submit a report and a corrective action plan to remedy this problem but failed to respond.

24. On January 15, 2015, after repeated requests to do so, Herrod belatedly provided JHI and CAPCS members with information concerning CAPCS's financial and operational status.

25. The reports provided by Herrod on or about January 15, 2015 reflected that the financial condition of CAPCS was in fact poor.  Herrod had previously concealed this fact from CAPCS and its members despite demands for information.

26. The information provided by Herrod on or about January 15, 2015 also contained misrepresentations of material facts concerning certain transactions involving CAPCS funds, including but not limited to the fact that, while Herrod

advised CAPCS that a payment of $165,000 had been made to Alkemi, in fact a payment of $195,000 was actually made to Alkemi.

27.    In light of the poor financial condition of CAPCS, information about which had been concealed and withheld by Herrod, CAPCS's Board of Advisors terminated the Management Agreement with Alkemi and voted to remove Herrod as manager of CAPCS.

28.    After Herrod was removed as manager of CAPCS, he and Alkemi continued to undermine CAPCS's ability to operate.  Among other things, Herrod and Alkemi removed CAPCS data servers from the company's control thereby blocking access to CAPCS data, records, and information and impeding the company's ability to render health care services to patients.

29.    The removal of the CAPCS servers caused irreparable damage to CAPCS's ability to service its patients, to bill for services provided, and has injured JHI and CAPCS's reputations, in addition to causing direct economic harm to CAPCS and its constituent members.   In order to rectify these wrongful actions, CAPCS was required to commence litigation in Tennessee state court to secure the return of protected health data necessary for patient care.

30.    Jackson Hospital has been injured and damaged by Herrod's acts and omissions and continues sustain damages and losses on an ongoing basis.

## CAUSES OF ACTION

## COUNT I - Fraudulent Inducement

31.   Counterclaim Plaintiff Jackson Hospital incorporates by reference and realleges each and every allegation set forth above, as if set forth herein.

32.   In the course of negotiations regarding a prospective joint venture between Jackson Hospital and PPI on and before September 30, 2014, Herrod made representations to senior management of Jackson Hospital, including but not limited to CEO Joe Riley, that PPI was a financially and economically viable business operation and assured Jackson Hospital of his ability to effectively manage any joint venture involving PPI and Jackson Hospital.

33.   Herrod knew that these representations were false but nevertheless made these representations in order to induce Jackson Hospital to contribute financial capital and resources to a new business venture with PPI.

34.   Jackson Hospital reasonably relied on Herrod's representations and acted to its detriment by, first, forming JHI for the purpose of funding the joint venture proposed by Herrod and, then, investing significant capital in JHI.  Jackson Hospital would neither have formed nor invested in JHI had Herrod provided accurate information regarding PPI's financial and economic viability.

35.  Jackson Hospital has suffered damages as a direct result of Herrod's fraudulent representations, including but not limited to loss of capital and other investments, loss of use of capital, accrual of additional expenses and liabilities, and other injuries.

WHEREFORE, Jackson Hospital seeks compensatory damages to be proven at trial, punitive damages, attorneys' fees and court costs, prejudgment interest and any other relief this Court deems appropriate.

### COUNT II – Negligence

36.  Counterclaim Plaintiff Jackson Hospital incorporates by reference and realleges each and every allegation set forth above, as if set forth herein.

37.  Herrod owed a duty to Jackson Hospital, the only shareholder in JHI, to operate and manage CAPCS with reasonable care.

38.   Herrod breached the duty owed to Jackson Hospital by failing to exercise prudent business judgment to preserve investments of capital and resources by Jackson Hospital through JHI, thereby causing damage to Jackson Hospital, including but not limited to loss of capital and other investments, loss of use of capital, accrual of additional expenses and liabilities, and other injuries.

WHEREFORE, Jackson Hospital seeks compensatory damages to be proven at trial, punitive damages, attorneys' fees and court costs, prejudgment interest and any other relief this Court deems appropriate.

## COUNT III – Wantonness

39.  Counterclaim Plaintiff JHI incorporates by reference and realleges each and every allegation set forth above, as if set forth herein.

40.   Herrod managed and operated CAPCS with reckless disregard for the interests of Jackson Hospital.

41.  Jackson Hospital has been damaged by Herrod's conduct, including but not limited to loss of capital and other investments, loss of use of capital, accrual of additional expenses and liabilities, and other injuries.

WHEREFORE, Jackson Hospital seeks compensatory damages to be proven at trial, punitive damages, attorneys' fees and court costs, prejudgment interest and any other relief this Court deems appropriate.

Jackson Hospital hereby demands a jury trial on all issues so triable.

/s/ Ben C. Wilson
Ben C. Wilson (ASB-1649-I54B)
T. Grant Sexton, Jr. (ASB-0915-S40S)
Philip A. Sellers (ASB-7172-C12F)
Counsel for Jackson Hospital & Clinic, Inc.
and Jackson Health, Inc.

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0831 (fax)
bcw@rushtonstakely.com (e-mail)

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on June 29, 2015, a true and correct copy of this pleading has been served upon the following counsel via the CM/ECF electronic filing system and/or by First Class United States Mail, first class postage prepaid:

> Bruce F. Rogers
> John W. Clark, IV
> Bainbridge, Mims, Rogers & Smith, LLP
> Post Office Box 530886
> Birmingham, Alabama   35253
>
> Royal C. Dumas
> Gilpin Givhan
> Post Office Drawer 4540
> Montgomery, Alabama   36103-4540
>
> Tabor R. Novak, Jr.
> Ball Ball Matthews & Novak, PA
> Post Office Box 2148
> Montgomery, Alabama   36102-2148

*/s/ Philip A. Sellers, II*
Of counsel