IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH L. HERROD and, CAESAREA-DEVELOPMENT, LLP, ) ) ) | |
| Plaintiffs, ) | |
| v. ) ) | 2:15cv152-WHA |
| JACKSON HEALTH, INC.; DONALD P. BROBST; C. DENNIS WOOLDRIDGE; A. CHANDLER MULLER; JACKSON HOSPITAL & CLINIC, INC.; PRIMARY PHYSICIANS, INC., ) ) ) ) ) ) | (wo) |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on Motions to Dismiss (Doc. #'s 64, 65, 66), filed by the Plaintiffs/Counterclaim Defendants Joseph L. Herrod and Caesarea-Development, LLP. Although labeled Motions to Dismiss, the Plaintiffs/Counterclaim Defendants' motions do not seek to dismiss all of the counterclaims. The Plaintiffs/Counterclaim Defendants have moved to dismiss the counterclaims of Jackson Health, Inc. ("JHI") for breach of fiduciary duty, negligence, and wantonness, and conversion. The Plaintiffs/Counterclaim Defendants have moved to dismiss the counterclaims of Jackson Hospital & Clinic, Inc. for negligence and wantonness. The Plaintiffs/Counterclaim Defendants have moved to dismiss the counterclaims of Donald P. Brobst; A. Chandler Muller; Dennis Wooldridge; and Primary Physicians, Inc.[1] for fraudulent inducement, breach of contract, breach of fiduciary duty, failure to prudently manage assets, waste, unjust enrichment, gross negligence, suppression, and conversion.

---

1 The case has been stayed as to Primary Physicians, Inc. upon suggestion of bankruptcy. (Doc. #63).

This case began as an interpleader action by Sterling Bank, interpleading funds and depositing the accounts of Caesarea-Millbrook, LLC and Caesarea-Chantilly, LLP.  After allowance of the interpleader of funds and realignment of the parties by the court, the realigned Plaintiffs Joseph L. Herrod and Caesarea-Development, LLC made claims against Defendants Jackson Hospital & Clinic, Inc.; Jackson Health, Inc.; Donald P. Brobst; A. Chandler Muller; Dennis Wooldridge; and Primary Physicians, Inc.  The Defendants answered and filed counterclaims against the Plaintiffs (Doc. #'s 52, 54, 55).

For reasons to be discussed, the Motions to Dismiss the Counterclaims of JHI (Doc. #64) is due to be GRANTED as to the conversion claim, the Motion to Dismiss the Counterclaims of Jackson Hospital (Doc. #65) is due to be GRANTED, and the Motion to Dismiss (Doc. #65) is due to be GRANTED, with the counterclaimants being given leave to replead dismissed counterclaims.

## II.   MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).    In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.    *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).    "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."    *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III.  FACTS

The allegations of the counterclaims are as follows:

Plaintiff/Counterclaim Defendant Joseph Herrod ("Herrod") is the former CEO of Primary Physicians, Inc. ("PPI"). Herrod is also the majority owner of Alkemi Management, LLC ("Alkemi") and the part owner of Caesarea Development, LLP ("CD").[2]

Herrod, Donald P. Brobst ("Brobst"); A. Chandler Muller ("Muller"); and Dennis Wooldridge ("Wooldridge") each owned 25% of the shares of PPI. Herrod was the CEO of PPI from 2010 to 2014. Herrod was responsible for the non-medical aspects of PPI's business, managing the medical practice of Drs. Brobst, Muller, and Wooldridge.

In December 2013, Baptist Health Montgomery gave notice that it would not renew PPI's lease on the premises where the business was operating. Herrod failed to renegotiate the lease or secure another location. Herrod then proposed a joint venture with Jackson Hospital. To accomplish a joint venture between PPI and Jackson Hospital, Central Alabama Primary Care Specialists, LLC ("CAPCS") was formed. PPI owned 71.6% of CAPCS and Defendant/Counterclaimant Jackson Health, Inc. ("JHI") owned the remainder. Jackson Hospital & Clinic, Inc. ("Jackson Hospital") was the parent corporation of wholly-owned subsidiary JHI.

Herrod created Alkemi to manage CAPCS, but Herrod also served as a Manager of

---

2 The court granted a motion to join as a necessary party Alkemi Management, LLC. (Doc. #56). An Alias Summons on a Third-Party Complaint was issued to Alkemi Management, LLC on September 14, 2015. (Doc. #76).

CAPCS. The counterclaims of Brobst, Muller, and Wooldridge (Doc. #52) allege that Herrod failed to perform his duties as Manager of CAPCS and misrepresented the financial status of the LLC. These counterclaimants allege that Herrod was using PPI funds to pay his own expenses, was performing services on behalf of Alkemi and CD without consent of the Board, and misrepresented and suppressed material facts regarding CAPCS. The counterclaims also allege various breaches of the management agreement. Herrod is also alleged to have mismanaged and misled the Board of PPI and the investors in CAPCS with regard to the implementation and ownership of technology, computer hardware, and software used by PPI and CAPCS. These counterclaimants further allege that the Board of Advisors of CAPCS terminated Alkemi's contract and that Herrod then improperly restricted access to PPI/CAPCS's server, which included all personal health information for PPI and CAPCS's patients and emails of PPI and CAPCS.

Counterclaimant JHI also alleges that Herrod, Caesarea, and Alkemi converted and appropriated to their own use money invested in CAPCS by JHI and assets owned by CAPCS (Doc. #54 at p.55).

Counterclaimant Jackson Hospital alleges that Herrod misrepresented and suppressed facts concerning PPI's financial status to induce Jackson Hospital to enter into a joint venture with PPI. (Doc. #55 at p.45). Jackson Hospital alleges that it invested significant capital in JHI for the purpose of funding the joint venture.

### IV. DISCUSSION

#### A. Counterclaims by JHI

Herrod and CD move to dismiss the counterclaims of JHI for breach of fiduciary duty, negligence, wantonness, and conversion on the basis that no duty was owed by Herrod to JHI to support a claim for breach of fiduciary duty, negligence, or wantonness; that there is no claim for

conversion of cash under Alabama law; and that the alleged conversion was of property belonging to CAPCS, not JHI.  The court will address each of these grounds for dismissal in turn.

    1.    Dismissal Based on Lack of Duty

Herrod and CD originally argued that Herrod was not the manager of CAPCS, but instead that Alkemi was the manager of CAPCS.  After considering the allegations of the counterclaim, the court requested that Herrod and CD file a Reply brief so that the court could determine whether they conceded the point that Herrod was alleged to be a manager of CAPCS.  (Doc. #77).  In the Reply brief filed in response to the court's Order, Herrod and CD state that they withdraw their request to dismiss the claims by JHI for breach of fiduciary duty, negligence, and wantonness.  (Doc. #78 at p.2).  Therefore, JHI can proceed on the claims for breach of fiduciary duty, negligence, and wantonness, in addition to the counterclaim for fraudulent misrepresentation as to which no motion to dismiss was filed.

    2.    Grounds for Dismissal of the Conversion Claim

JHI has claimed that Herrod, CD, and Alkemi converted money and assets invested by JHI in CAPCS.  The conversion count itself merely states that Herrod, CD, and Alkemi intentionally converted corporate monies and assets.  (Doc. #54 at p.55).  The count also incorporates all previous factual allegations.  (Doc. #54 at p.55).  In response to the Motion to Dismiss, JHI points to allegations in the factual background portion of the Counterclaim that Herrod "diverted approximately $600,000" and converted furniture, a server, and related software.  (Doc. #54 at p.46-47: ¶18i, k).   JHI has stated that a partner can sue individually for injury to a partnership, and argues that an LLC is treated like a partnership, citing *Simpson v. Sto. Corp.*, 951 F. Supp. 202, 207 (M.D. Ala. 1996).

Herrod and CD request that the court dismiss the conversion claim against them, arguing

that there can be no conversion of cash.  Herrod and CD also contend that the members of an LLC are not entitled to assert claims on behalf of the entity because if a member is permitted to assert claims directly, creditors could also assert claims directly against the individual member.  They cite to Ala. Code §10A-5-4.02 for the proposition that real property is acquired in the name of the limited liability company so that title vests in the company and not the members.  Herrod and CD claim that JHI must prove that it had title to the property, but the allegations of the conversion relate to property that belongs to CAPCS, not JHI.

The court first addresses the counterclaim for conversion of cash.  Generally, cash cannot be the subject of a claim for conversion, but if the cash at issue is "specific money capable of identification," claims of conversion may be appropriate.  *Green Tree Acceptance, Inc. v. Tunstall*, 645 So. 2d 1384, 1386 (Ala. 1994).  The allegation regarding the $600,000 in the counterclaim, as noted above, is "Herrod diverted approximately $600,000 from PPI and/or CAPCS towards Alkemi's management fee."  (Doc. #54 at p.46).  This allegation of an "approximate" amount does not meet the standard of specific money capable of identification.  *See, eg., Johnson v. Life Ins. Co. of Alabama*, 581 So.2d 438, 443 (Ala.1991) (holding that an action would not lie for the alleged conversion of life insurance premiums paid by the plaintiffs, because "there was no specific, identifiable coin or bill [and no] evidence that the money had been placed into a separate account.").  Therefore, this aspect of the conversion claim is due to be dismissed.

As to the conversion claim of assets such as furniture and software, Ala Code §10A-5-4.02 provides as follows:

> (a) Property may be acquired, held, and conveyed in the name of the limited liability company. Any estate in real property may be acquired in the name of the limited liability

> company and title to any estate so acquired shall vest in the limited liability company itself rather than in the members individually.
> (b) All property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or otherwise is limited liability company property. A member has no interest in specific limited liability company property.

The Alabama Supreme Court has explained that "[l]ike corporations and limited partnerships, limited liability companies are creatures of statute." *Harbison v. Strickland*, 900 So. 2d 385, 389 (Ala. 2004).   The plain language of Ala. Code §10A-5-4.02 states that a member has no interest in limited liability property.   Similar language has been applied by the Alabama Supreme Court to conclude that members of an LLC cannot rely on the diminution in value of the property of the LLC to give them standing because as members of the LLC they have no interest in specific limited liability company property.   *Carey v. Howard*, 950 So. 2d 1131, 1135 (Ala. 2006) (applying "no interest" language in Ala. Code §10-12-23b)).   The statute undermines any argument by JHI based on an analogy to other business organizations case law.   Under the Alabama statute, as a member of the LLC, JHI does not have an interest in property, or specifically-identified cash, owned by CAPCS upon which to base a claim for conversion.

The statutory argument raised by Herrod and CD, however, was an argument raised for the first time in the Reply brief and is an argument to which JHI did not have the opportunity to respond.   Therefore, the court will dismiss the conversion claim without prejudice to JHI refiling it, if JHI contends that it can replead a conversion claim consistent with the Alabama limited liability company statute.

## B.  Counterclaims by Jackson Hospital

Jackson Hospital asserts only three counterclaims:   fraudulent inducement, negligence,

and wantonness. Herrod and CD move only to dismiss the counterclaims for negligence and wantonness. Initially, when Herrod and CD moved to dismiss these counterclaims, they argued that Herrod owed no duty to Jackson Hospital because Alkemi is alleged in the counterclaim to be the manager of CAPCS. In their Reply, which was requested by the court, Herrod and CD withdraw their argument that Herrod did not act as the manager of CAPCS. (Doc. #79 at p.2). Herrod and CD continue to maintain, however, that Herrod owes no duty to Jackson Hospital, and that the negligence and wantonness claims are due to be dismissed, because while Jackson Hospital is the sole member of JHI, it is JHI which is a member of CAPCS, not Jackson Hospital. Herrod and CD state that the duty owed by a manager of a limited liability company does not extend beyond the members of that limited liability company. They point out that the Ala. Code refers to the duties owed by a manager to the company and its members. Ala. Code §10A-5-3.03(k).

Jackson Hospital states that JHI is a wholly-owned subsidiary of Jackson Hospital, so Jackson Hospital is an investor in CAPCS even if it is not a member. Jackson Hospital has pled in the counterclaim that Jackson Hospital is the only shareholder in JHI (Doc. #55 at p.53). Jackson Hospital cites to *DGB, LLC v. Hinds*, 55 So. 3d 218 (Ala. 2010) to support its theory.

In *DGB*, two individuals, named Hinds and Kirkland, through other entities, owned Decatur and Gulf Stream, which formed a limited liability company, Bon Harbor, LLC. Hinds and Kirkland were the managers of Bon Harbor, LLC. Three other individuals owned DGB, which invested in and became a part-owner of the limited liability company, Bon Harbor, LLC. In the opinion, the Alabama Supreme Court referred collectively to the owners of DGB and DGB

itself as "the investors."  *DGB, LLC*, 55 So. 3d at 221.  Among other claims,[3] the investors brought a claim of negligence against Hinds and Kirkland and other defendants.  With respect to the negligence claim, the court held that "the investors state a negligence claim against Hinds and Kirkland."  *Id.* at 235.  The court went on to note, however, that "the investors" were injured because they contributed money toward the transaction, *and* that the three owners personally guaranteed a loan.  *Id.* at 235.  It was on that basis that the court held that "the investors" had stated a claim for negligence.  *Id.*  In its discussion of standing generally, the court emphasized that standing was based on individual injury.  *Id.* at 229.

Federal courts sitting in diversity jurisdiction must apply substantive state law.  *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009).  Another judge of this court has interpreted *DGB* in *ECR Properties, LLC v. Camden Cnty. Dev.,* 998 F. Supp. 2d 1295, 1310 (M.D. Ala. 2014).  In that case, in determining whether a claim was direct or derivative, the court explained that in *DGB*, the Alabama Supreme Court "held that DGB and its members had standing to sue the defendants directly" because representations had been made directly to the plaintiffs.  *Id.*

*DGB* allowed a negligence claim by an owner of a member of an LLC to proceed against the managers of the LLC based on an interest held individually by the owner of the member of the LLC.  In this case, Jackson Hospital does not appear to allege an injury to itself, but argues only that it owned JHI, and therefore, suffered an injury in that way.  The court must conclude that the claims of Jackson Hospital as an owner of a member of the LLC cannot proceed against the manager of the LLC.

Rather than dismiss the claims with prejudice, however, the court will give Jackson

---

[3] Although a conversion claim had been asserted, "the investors expressly waive[d] any appeal . . . from the trial court's dismissal of their claims alleging conversion." *DGB*, 55 So. 3d. at 222.  DGB does not bear on the conversion counterclaims in the instant case, therefore.

Hospital additional time in which to plead its counterclaims for negligence and wantonness, if it chooses to do so, and if it is its position that it has an interest sufficient to fall within the interest recognized in *DGB*.

Jackson Hospital has also argued that Herrod is liable for all torts committed by him regardless of whether he is acting in his capacity as a member of CAPCS. If Jackson Hospital intends to proceed on that theory, the factual basis of that claim should be stated in a re-pled complaint.

Finally, Herrod and CD argue that the acts alleged on Herrod's part are intentional acts. Jackson Hospital argues that the fact statement of the counterclaims also includes allegation of negligence. Again, should Jackson Hospital choose to replead its counterclaims, it should make clear which factual allegations are the basis of any negligence and wantonness claims.

### C.   Counterclaims by Brobst, Muller, and Wooldridge

Herrod and CD move to dismiss all but one count of the counterclaims, a counterclaim for breach of contract of employment agreement, asserted by Brobst, Muller, and Wooldridge in their individual capacities. Herrod and CD move to dismiss other counterclaims--breach of contract, breach of fiduciary duty, failure to prudently manage assets, waste, unjust enrichment, gross negligence, and conversion--on the ground that the counterclaimants seek damages which are properly considered damages of CAPCS. They also move to dismiss the counterclaim for conversion because the counterclaimants only allege a conversion of cash, to dismiss counterclaims for fraudulent inducement as barred by the statute of limitations, and to dismiss the counterclaim for fraudulent inducement and suppression for failure to adequately plead those claims. The court turns to each of the grounds for dismissal in turn.

   1.   Standing of Brobst, Muller, and Wooldridge

Herrod and CD cite to case law for the proposition that damages sought by a plaintiff which are incidental to his or her status as a stockholder are derivative claims which must be brought on behalf of the corporation and, therefore, Brobst, Muller, and Wooldridge do not have a sufficient interest upon which to base their counterclaims for breach of contract, breach of fiduciary duty, failure to prudently manage assets, waste, unjust enrichment, gross negligence, and conversion counterclaims. *See Altrust Financial Serv., Inc. v. Adams*, 76 So. 3d 228 (Ala. 2011).

Brobst, Muller, and Wooldridge respond that Alabama law provides for a direct action by a member of the LLC if the wrong is committed directly against the member that is not as a result of injury to the company, and is not shared by all members, citing *ECR Properties, LLC v. Camden Cnty. Dev.,* 998 F. Supp. 2d 1295, 1310 (M.D. Ala. 2014).

Herrod and CD respond that Brobst, Muller, and Wooldridge's argument in brief that there were injuries suffered by the counterclaimants as members of that LLC that were not suffered by Herrod is not an allegation of the Counterclaim, and is factually incorrect because even if Herrod profited as an individual from alleged wrongdoing, any injury suffered as a diminution of shares also would have been suffered by Herrod.   Herrod and CD finally argue that if the harm allegedly suffered by Brobst, Muller, and Wooldridge came from their positions in Alkemi Management, they contractually agreed that any Alkemi-related claims would be heard in *Alkemi Management, LLC v. Donald P. Brobst, et al*., Case No. 9:15cv80794-WJZ.

In *Altrust Financial Serv*., the Supreme Court of Alabama explained that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation. *Id.* at 244.   The lost value of a minority shareholder's stock resulting from director self-dealing or mismanagement is a derivative injury, incidental to one's status as a stockholder. *Id.*   As

11

discussed above, in the context of an LLC, the Supreme Court of Alabama has also held that members of the LLC cannot rely on diminution in the value of property to convey standing because they have no interest in specific limited liability company property. *Carey v. Howard*, 950 So. 2d 1131, 1136 (Ala. 2006). The Supreme Court of Alabama, however, has allowed direct actions by investors in a member of an LLC against the manager of the LLC when they "alleged injury to themselves individually." *DGB*, 55 So. 3d at 229 (distinguishing the interest claimed in *Carey*); *see also ECR Properties*, 998 F. Supp. 2d at 1311.

In Brobst, Muller, and Wooldridge's counterclaims they allege that Herrod's breach of fiduciary duties resulted in damage to individual shares. (Doc. #52 at p. 33). It appears to the court that damages alleged which are a diminution in value of shares falls within the rationale of *Altrust Financial Serv. Inc.* and *Carey*. The claim for waste of a corporate asset also appears to be one which cannot form the basis of a direct action. The court notes that Brobst, Muller, and Wooldridge also state that they have a direct claim based on misrepresentations regarding their personal guarantees being released at Sterling Bank, citing to Doc. #52 at p.29:¶22gg. That fact, however, does not appear to be referenced in any of the counterclaims for relief. Rather than dismiss with prejudice Brobst, Muller, and Wooldridge' direct action claims, therefore, the court will give Brobst, Muller, and Wooldridge additional time in which to replead their counterclaims to specify what damages are claimed, if they contend that they have an individual interest which can be asserted as a direct action under Alabama law.

    2.    Conversion Counterclaim

The argument for dismissal of the conversion claim is on the basis that it alleges conversion of generic money, which cannot be the subject of a conversion claim, and that the only property identified was owned by CAPCS, not Brobst, Muller, and Wooldridge.

As previously explained, Ala Code §10A-5-4.02 states that members of an LLC do not have an interest in the property of the LLC.   Therefore, unlike other direct actions which can proceed under *DGB*, there is no individual interest under Alabama law which can form the basis of a conversion claim by the member against the manager of the LLC on the member's individual behalf.   Therefore, Brobst, Muller, and Wooldridge do not have an interest in property of CAPCS upon which to base an individual claim for conversion. *See Carey*, 950 So. 2d 1136.   However, as with the counterclaims of JHI, if Brobst, Muller, and Wooldridge contend that they can assert a conversion claim consistent with Alabama law, the court will give them an opportunity to replead that counterclaim.

    3.   Statute of Limitations as to Fraudulent Inducement Claim and Failure to State a Claim of Fraud in the Inducement and Suppression

Herrod and CD's statute of limitations argument is that Brobst, Muller, and Wooldridge have brought a claim for fraudulent inducement, but they claim they were induced to enter into business with Herrod from 2010 to 2014.   They also contend that the fraud claims are insufficiently pled because they have failed to provide any information as to time, place, or the substance of any misrepresentations.

Brobst, Muller, and Wooldridge respond that at some time after December 2013 but before September 2014, Herrod proposed the joint venture with Jackson Hospital during which he made representations which induced Brobst, Muller, and Wooldridge to enter into the agreement and affirm guarantees.   In Count 1 of the counterclaim, Brobst, Muller, and Wooldridge refer to Herrod's misrepresentations as to management of PPI, Alkemi, and CAPCS.   (Doc. #51 at p.30). The count also incorporates all previous allegations of the counterclaim.   In the brief opposing dismissal, Brobst, Muller, and Wooldridge refer to factual allegations in paragraph 22 of the

13

factual background of the counterclaim as adequately stating a claim, not the count itself.  (Doc. #74 at p.20-21).

In reply, Herrod and CD state merely that they are unable to determine what fraud claims have been asserted and request that the court direct Brobst, Muller, and Wooldridge to clarify their fraud claims.  Brobst, Muller, and Wooldridge, while not conceding that the claims have not been sufficiently pled, request that if the court were to find that their claim is not sufficiently pled, they be given the opportunity to replead it.

Upon review of the "Counter Complaint" the court agrees that a more definite statement of the suppression and fraud in the inducement claims is required.  *See* Fed. R. Civ. P. 12(e).  The court will allow Brobst, Muller, and Wooldridge to make clear within separate counts seeking recovery for fraud the factual basis of each fraud claim.

## V.  CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Motion to Dismiss the Counterclaims of Jackson Health, Inc. (Doc. #64) is GRANTED only as to the conversion claim and that claim is DISMISSED without prejudice, the Motion to Dismiss having been withdrawn in all other respects.  Jackson Health, Inc. is given until October 22, 2015 to file a new, amended counterclaim, should it choose to do so.  Any amended counterclaim must be complete unto itself in accordance with M.D. Ala. Local Rule 15.1 and set out the factual basis for a conversion claim consistent with Alabama law, as discussed above.  If Jackson Health, Inc. chooses not to file an amended counterclaim, it will proceed on its counterclaims for fraudulent misrepresentation, suppression, breach of fiduciary duty, negligence, wantonness, and unjust enrichment.

2. The Motion to Dismiss the Counterclaims of Jackson Hospital & Clinic, Inc. (Doc. #65) is GRANTED and the counterclaims for negligence and wantonness are DISMISSED without prejudice.  Jackson Hospital & Clinic, Inc. is given until October 22, 2015 to file a new, amended counterclaim, should it choose to do so.  Any amended counterclaim must be complete unto itself in accordance with M.D. Ala. Local Rule 15.1 and set out the factual basis for an individual injury on which to base its claims for negligence and wantonness.  If no amended counterclaim is filed, Jackson Hospital & Clinic, Inc. will proceed only on its counterclaim for fraudulent inducement.

3. The Motion to Dismiss (Doc. #66) is GRANTED and the counterclaims in Counts 1, 3-10, are DISMISSED without prejudice.  Defendants Donald P. Brobst, C. Dennis Wooldridge, and A. Chandler Muller are given until October 22, 2015 to file a new, amended Counterclaim, should they choose to do so. An amended counterclaim must be complete unto itself in accordance with M.D. Ala. Local Rule 15.1 and must more specifically state the damages which they contend support their direct actions as discussed in this Memorandum Opinion and Order, state the facts which support a counterclaim for conversion consistent with Alabama law, and/or state in separate counts their fraud in the inducement and suppression claims and the factual bases for those claims.  If they do not file any amended counterclaim at all, the case will proceed only on their Counterclaim count 2 for breach of contract of employment agreement.

Done this 7th day of October, 2015.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE